UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL ACTION NO. 10-10374-RGS

UNITED STATES

v.

ALEXANDER CUEVAS

MEMORANDUM AND ORDER
ON DEFENDANT'S MOTION TO SUPPRESS

August 18, 2011

STEARNS, D. J.

Alexander Cuevas was indicted on one count of conspiracy to distribute heroin and on four counts of distributing heroin to a government informant through the agency of a coconspirator. On June 27, 2011, the court held an evidentiary hearing on Cuevas's motion to suppress evidence of an identification procured by means of a motor vehicle stop conducted as he drove from the scene of one of the distributions. On August 8, 2011, the case against Cuevas went to trial before a jury. On August 12, 2011, Cuevas was convicted of all five counts, although the jury made a special finding that the total amount of heroin distributed pursuant to the conspiracy totaled less than 100 grams. On August 5, 2011, immediately prior to the trial, the court entered an order denying the motion to suppress, noting that a written decision would follow. This is that decision.

# FINDINGS OF FACT

Based on the credible testimony and evidence offered at the hearing, I make the following findings of fact.

On January 27, 2010, officers working with an FBI-led task force arranged with Steven Reth, a cooperating witness, to buy 20 grams of heroin for $1,300 from Jermaine Campos, a known drug dealer operating from an apartment at 767 Summer Street in Lynn, Massachusetts. The sale was to take place shortly after 11:00 a.m. at Campos's apartment. Under the watch of the surveilling officers, including Detective Stephen Withrow of the Lynn Police, Reth entered Campos's apartment at 11:29 a.m. carrying a concealed video recorder. Campos informed Reth that he had a new supplier who would arrive shortly. At 11:31 a.m., a blue Honda bearing Massachusetts registration 629BF5, arrived in front of the Summer Street apartment building. An Hispanic male exited the Honda and entered 767 Summer Street. Two minutes later, he emerged from the building. During the interval, Campos left Reth in the apartment and stepped out into the hallway. He returned almost immediately with 20 grams of heroin, which he then sold to Reth.

As the Hispanic male drove from the apartment, Detective Withrow followed him in an unmarked vehicle and radioed the direction the Honda was heading to the Lynn Police dispatcher. He asked that the Honda be stopped by a marked cruiser for

purposes of identifying the driver. Albert Divirigilio, a Lynn Police patrol officer, responded to the dispatch and located the Honda as it drove down North Common Street in Lynn. Divirigilio observed the Honda operating in excess of 30 miles per hour in a residential zone posted for a maximum speed of 20 miles per hour. After following the Honda a short distance, he signaled for the driver to pull over. Divirigilio approached the Honda, which was being driven by the defendant, and asked for his license and registration. The license identified the driver as Alexander Cuevas. Having determined Cuevas's identity, Divirigilio issued a verbal warning for the speeding infraction and allowed Cuevas to drive away. The entire stop lasted less than five minutes.[1]

## DISCUSSION

Cuevas argues that his identity is the suppressible fruit of a pretextual traffic stop – he argues that he was stopped ostensibly for speeding, when the true reason was to ascertain and verify his identity. Second, he argues that the "one-on-one" identification made by Officer Divirigilio at the scene of the stop (which lasted at most for five minutes) was impermissibly suggestive and therefore inherently unreliable.

---

[1] He also took a picture of Cuevas's driver's license with his cell phone camera. The picture, however, was lost when Divirigilio inadvertently dropped the cell phone into a toilet.

Identification evidence that is obtained as the result of an illegal search or seizure is not automatically excludable simply because it would not have come to light but for the improper actions of police. Indeed, it is not clear whether identification evidence can be suppressed at all. This at least is what the Supreme Court appeared to say in *Immigration & Naturalization Serv. v. Lopez-Mendoza*, 468 U.S. 1032 (1984). "The 'body' or identity of a defendant . . . in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred." *Id*. at 1039. *See also People v. Lewis*, 975 P.2d 160, 171-172 (Colo. 1999) (en banc) ("In an in-court identification, the defendant is present in the courtroom in accordance with a legal process. Thus, there is no need to ask whether the defendant is present in the courtroom as the direct result of a violation of the Fourth Amendment."). *Cf. United States v. Santana*, 427 U.S. 38, 42 (1976) (a person has no reasonable expectation of privacy in his publicly exposed physical appearance).

The majority of federal courts, relying on the above-quoted language in *Lopez-Mendoza,* hold that neither identity nor records establishing identity can be suppressed under the Fourth Amendment. *See United States v. Del Toro Gudino*, 376 F.3d 997, 1001 (9th Cir. 2004) (identity may not be suppressed even in cases of egregious constitutional violations – when the Supreme Court said "'never' suppressible," it meant

4

'never.'"); *United States v. Bowley*, 435 F.3d 426, 430-431 (3d Cir. 2006) ("[W]e doubt that the Court lightly used such a sweeping word as 'never' in deciding when identity may be suppressed as the fruit of an illegal search of arrest."); *United States v. Roque-Villanueva*, 175 F.3d 345, 346 (5th Cir. 1999) (quoting *Lopez-Mendoza* and holding that an allegedly illegal stop of an alien, which revealed that the alien had been deported, did not require suppression of the alien's identity); *United States v. Navarro-Diaz*, 420 F.3d 581, 588 (6th Cir. 2005) (concluding "that the Supreme Court's holding in *Lopez-Mendoza* mandates that Navarro-Diaz's motion to suppress his identity be denied, regardless of whether this information was obtained in violation of his Fourth Amendment rights.").

A minority of Circuit Courts, however, has read *Lopez-Mendoza* as applying "only to cases in which the defendant challenges the jurisdiction of the court over him or her based upon the unconstitutional arrest, not to cases in which the defendant only challenges the admissibility of the identity-related evidence." *United States v. Olivares-Rangel*, 458 F.3d 1104, 1111 (10th Cir. 2006). *See also United States v. Guevara-Martinez*, 262 F.3d 751, 754-755 (8th Cir. 2001) (same); *United States v. Oscar-Torres*, 507 F.3d 224, 230 (4th Cir. 2007) (same); *United States v. Farias-Gonzalez*, 556 F.3d 1181, 1185 (11th Cir. 2009) (same). The circuit split was to have been resolved by the Supreme Court's review of a decision of the New York Court of

Appeals, *People v. Tolentino*, 926 N.E.2d 1212 (N.Y. 2010). However, on March 29, 2011, the writ of certiorari was dismissed as having been improvidently granted. *See Tolentino v. New York*, 131 S. Ct. 1387 (2011).

The issue in this case, however, can be resolved on less esoteric grounds. It has become black letter law that Fourth Amendment analysis (with some exceptions not applicable here) involves "an objective assessment of [an] officer's actions in light of the facts and circumstances confronting him at the time." *Scott v. United States*, 436 U.S. 128, 136 (1978). *See also Horton v. California*, 496 U.S. 128, 138 (1990) ("[E]venhanded law enforcement is best achieved by the application of objective standards of conduct, rather than standards that depend upon the subjective state of mind of the officer."). A logical extension of the objective assessment doctrine is the one made clear in *Whren v. United States*, 517 U.S. 806, 813 (1996), that "these cases [and others] foreclose any argument that the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officers involved." *See Ohio v. Robinette*, 519 U.S. 33, 38 (1996) (finding that an officer's subjective reasons for asking consent for a search are irrelevant to a reasonableness inquiry); *Arkansas v. Sullivan*, 532 U.S. 769, 771-772 (2001) (per curiam) (finding irrelevant that an officer's motive in arresting defendant for speeding was to search his car for illegal narcotics); *Devenpeck v. Alford*, 543 U.S. 146, 154-155 (2004) (finding irrelevant that officer cited

a legally invalid basis for an arrest when facts existed justifying probable cause); *Brigham City, Utah v. Stuart*, 547 U.S. 398, 404 (2006) (holding that the subjective motivation of officers rendering aid in exigent circumstances is irrelevant).

While the motivation of Detective Withrow in ordering the stop of Cuevas's car was exactly as Cuevas states it – to learn his identity and not to punish any possible motor vehicle infraction – that motivation is of no moment as Officer Divirigilio had probable cause to stop Cuevas's vehicle for speeding. That Divirigilio commanded Cuevas to produce his driver's license and registration subtracts nothing from the analysis. *See United States v. Fernandez*, 600 F.3d 56, 62 (1st Cir. 2010); *Commonwealth v. Lopes*, 455 Mass. 147, 160 (2009).

Suggestiveness that leads to "'a very substantial likelihood of irreparable misidentification'" violates a defendant's right to due process. *Neil v. Biggers*, 409 U.S. 188, 198 (1972) (citation omitted). "[R]eliability is the linchpin in determining the admissibility of identification testimony . . . ." *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977). But while "unnecessarily suggestive" confrontations are discouraged, they are not subject to a per se rule of exclusion. *Id*. at 113. Rather, the issue is whether, in the totality of the circumstances, a suggestive identification is nevertheless reliable. *Id*. at 106. Under the test developed by the Supreme Court in *Biggers* and *Brathwaite*, a defendant must establish by a preponderance of the evidence that the identification

procedure was unnecessarily suggestive. If the defendant meets that burden, the government is then required to show by clear and convincing evidence that the identification's reliability outweighs any suggestive taint. *State v. Cefalo*, 396 A.2d 233, 238-239 (Me. 1979). Reliability is a function of the following factors: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of any prior description; (4) the level of certainty of the witness; and (5) the time elapsed between the crime and the confrontation. *Biggers,* 409 U.S. at 199-200.

Here the identification was made by a single witness, Officer Divirigilio. While one-on-one confrontations are discouraged, where they are essential to an ongoing police investigation, and reflect an efficient and expeditious execution of police duties, they do not offend due process. *See Simmons v. United States*, 390 U.S. 377, 384-385 (1968). The identification by Divirigilio easily meets both tests. The officers watching 767 Summer Street had no knowledge of who the defendant was, but ample probable cause to believe that he was Campos's heroin supplier. Ascertaining his identity was therefore essential to the investigation. The fortuity of a motor vehicle infraction gave police an opportunity to efficiently and expeditiously perform the task.

Two other considerations also come into play. First, Divirigilio is not an ordinary percipient witness to a crime. He is a law enforcement whose job it is to accurately

identify criminal suspects with whom he comes into contact. And unlike the ordinary witness, who is more often than not a casual observer of an unexpected event, Divirigilio stopped the car with the specific and deliberate purpose of identifying the defendant. Second is the fact that Cuevas's identity was corroborated by his driver's license, which disclosed not only his name but also a photograph that Divirigilio confirmed matched the driver of the Honda. In sum, there was nothing unreliable about the identification of Cuevas and therefore there is nothing to suppress.

ORDER

For the foregoing reasons, defendant's motion to suppress evidence of the identification is DENIED.

SO ORDERED.

/s/ Richard G. Stearns

_____
UNITED STATES DISTRICT JUDGE